Case number 24-3426 from the District of Nebraska, Lynn Panting v. United States Case number 24-3426 from the District of Nebraska, Lynn Panting v. United States Mr. Shaw May it please the Court, Whaley Shaw for the United States. Under the common law, exculpatory clauses are generally enforceable unless it is free from doubt that one of a few narrow exceptions applies. The only such exception that plaintiffs are relying on here is that for public and essential services. Now that exception applies to common carriers like railroads and other defendants who are charged with a duty of public service and are prohibited from contracting away that duty. The Aero Club, the defendant here, is nothing like a common carrier. The Aero Club rents planes to a small group of club members. It does not provide transportation services to the general public. And what it does is it plainly does not entail a duty of public service in the same manner as, say, a railroad, a utility, or a hospital. I have to ask, what about the public service of providing an exam so that we have enough commercial airline pilots and other pilots to take care of packages and passengers and things like that? Well, first, we would disagree that that is a service that entails a duty of service to the public in the same manner as a railroad, a hospital, or a utility. But even if we were to consider that a public or essential service, the exception applies when the defendant is providing the public service. And, again, the theory, the rationale is that the defendant cannot contract away their duty to the public. But here, the person who is arguably providing the public service is the plaintiff, Mr. Panting. And so under that rule, then perhaps he could not require Mr. Trubilla, who is the applicant, to contract away his right to sue Mr. Panting. But that says nothing about whether Mr. Panting can contract away his right to sue the Aero Club. The Aero Club is not the one that is providing the public or essential service. And the Supreme Court's decision in Baltimore and Ohio expressly rejects the idea that because the – that this exception can apply – or, I'm sorry. The decision makes clear that this exception applies only when the defendant is the party that is providing the public service. But if a plaintiff – if a plaintiff provides a public or essential service, and that was the case in Baltimore and Ohio, that does not support the rationale for the exception, and therefore the exception does not apply. In fact, plaintiffs here do not identify a single case from any jurisdiction, state or federal, in which a court strikes down an exculpatory clause as contrary to public policy on the ground that the plaintiff is providing a public or essential service and the defendant merely provides some support or provides some necessary ingredient in the plaintiff's doing so. Counselor, are we under a pure de novo standard of review here, or do we owe some deference to the District Court's findings regarding the applicability of these exceptions? No, it is a de novo standard of review. And the reason is that, as the Supreme Court recognized in Dupree, this case involves a pure legal issue. And the reason for that is that there are no disputed facts in this case. I don't understand plaintiff to be raising any disputed facts, and therefore the District Court decided as a matter of law that the covenant not to sue was not enforceable as contrary to public policy under Nebraska state law. And that is a purely legal question that is before this Court on undisputed facts, and therefore this Court should apply de novo review. Are we going by what the Nebraska Supreme Court would say is a public or essential service? Obviously, there's a dispute between the parties as to what law applies. We would contend that the correct answer, as a sort of matter of first principles, is to apply federal common law under the Supreme Court's decisions in Boyle and Sechinger. But I don't think this Court needs to decide that issue. So I think both sources of law lead to the same result, and therefore the Court need not decide it. And so I think it's a difficult question that this Court need not grapple with in this case. I also wanted to just point out that I think, you know, we assumed earlier that providing a check ride is the type of service that entails a duty of service to the public in the same manner as a railroad, but I actually think that that's wrong. The provision of a check ride is a service that is provided to a very small subset of the population, and that is people who are seeking particular FAA certificates or ratings. And that's simply not the kind of service like a hospital or a railroad or an airline, you know, that entails a duty of service to the general public. I'm happy to answer any questions the Court may have about reviewability or the interpretation of the covenant and whether it applies to this case. Well, on the covenant, so there are some tough questions potentially tied up in the covenant, maybe fact-bound questions even. And I just wonder whether if we agree with you that the exceptions don't apply, do we remand this back to the district court for, say, a jury trial on the scope of the covenant? Or what's your view of it? I don't think that's necessary at all. I mean, obviously the plaintiff is raising that as an alternative ground for affirmance, but we think that argument is clearly wrong in light of the language of the covenant. And I think they have two theories for why the covenant doesn't apply. One is that this particular flight was not an Aero Club activity. I think that's clearly wrong. The Air Force instruction that governs the Aero Club clearly provides for the use of aircraft in conducting check rides. So renting the aircraft for the purpose of allowing Mr. Trubilla to conduct a check ride with Mr. Panting was clearly a club activity. The fact that Mr. Panting or that a DPE or an FAA inspector was required to conduct that activity doesn't mean that it's not an activity of the Aero Club. And the other rationale that the plaintiff argues for why the covenant does not apply is that Mr. Panting was not acting as a pilot, copilot, or passenger. And I think that argument is squarely rebutted by the Fifth Circuit's decision in Hays, which we cite in our brief. And they have a very good explanation, actually, of why a DPE does serve in those roles. And here's what the Fifth Circuit says. During a flight test, the pilot applicant, and here that would be Mr. Trubilla, formally sits as pilot in command so that the inspector or examiner can determine if the applicant has the ability to perform the maneuvers and procedures required to be a certified pilot in command. But because the applicant's abilities are being tested during the flight and because they remain in doubt until he or she passes the examination, however, the inspector or examiner, and here that would be Mr. Panting, who generally also acts as copilot, necessarily must perform certain duties of pilot in command. For example, the inspector decides what maneuvers or procedures the applicant must perform and when, where, and in what manner he or she must execute them. These are matters usually reserved for the pilot in command to decide. Did they decide that as a matter of law, or did they decide it because there was a jury that found that he was a pilot or a copilot? I don't think I, to be honest, I can't remember the precise language of the opinion, but I think just from the quote that I have here, it sounds clearly like they're, you know, they're not, there's no assertion that, there are no disputed facts there as here about what function the DPE performs. Did you see why there'd be a difference? Because if it's the affirmance of a jury trial, they just say, yeah, there's enough evidence. It's sufficient, whereas if it's summary judgment or judgment as a matter of law, we'd be in a different boat. But even if that were the case, I think we have other sources that support the fact that Mr. Panting was acting as a pilot or copilot. So, for example, the designee handbook that governs the conduct of DPEs provides that the DPE is usually supposed to sit in a pilot station and may serve as the safety pilot, and the safety pilot is the person who protects the overall safety of the flight to whatever extent necessary and ensures that all maneuvers, procedures, and or alternate courses of action are performed safely. So, again, Mr. Panting as the DPE in this case, because he was testing the applicant's ability to fly or, you know, to obtain this, to demonstrate the skills necessary to obtain the certificate, he obviously has to have the ability to step in in case the applicant does something wrong. All those facts you just mentioned, are those in the record? I'm assuming no, since we're at such an early stage. And so, therefore, can we decide, like the Fifth Circuit did, what the DME is without knowing how this particular thing happened? I mean, I don't think these are disputed facts. I mean, these are basic characteristics of the role of a designated pilot examiner that are governed by regulations and handbooks and sort of sources of law that are external to this case. So it doesn't depend on any witness testimony about, you know, what Mr. Panting was doing on that particular day. And just on the threshold question of reviewability, I would just emphasize that Dupree makes clear, again, that a purely legal issue is one that does not depend on any disputed facts. And, again, we contend that there are no disputed facts here. If there are any facts that the court has concerns about, for example, the income evidence that we cited, which we thought were undisputed, perhaps are not, we're happy to waive any reliance on that evidence and simply rest on everything else that we've cited. And we think that is sufficient to establish the enforceability of the covenant. If I may, I'll reserve the balance of my time for rebuttal. You certainly may. Thank you. Mr. Anderson. May it please the Court. My name is Donald R. Anderson. I'm from Atlanta, Georgia. With me today is Mr. Dave Koppel from Norfolk, Nebraska. We are representing Ms. Lynn D. Panting, the appellee, and the personal representative of the estate of Ronald B. Panting, deceased. Ms. Panting is also with us here today in the audience. There are three reasons that this court should dismiss or deny this appeal and affirm the district court. First, and most frankly, I think, a critical initial issue is that this court lacks jurisdiction to consider this appeal because it's not based on a final judgment under 28 U.S.C. section 1291. Instead, it seeks review of denial of a motion for summary judgment that was made before the trial. This was a bench trial before the trial, and at the trial, there was no motion made under Rule 52C for the entry of judgment based on partial findings. Is it a purely legal issue in this case? It is not, Your Honor. I'm happy to answer that question. I thought you said in your reply brief there were no disputed facts. I hope I didn't say that. That's his reply. I hope I didn't say that. No, I'm sorry, that's his reply brief. I looked too quickly at the notes. No, this is not a purely legal issue, Judge, and I can perhaps address that in two ways, and I'll try to summarize it. First of all, if we read Judge Girard's decision, Judge Girard is looking at facts. He's deciding a question of law, whether this exculpatory language is enforceable under Nebraska law. That is a question of law, but the Nebraska cases cited by Judge Girard say I have to look at the facts and circumstances of the document and the relationship of the parties. And Judge Girard's opinion goes into great detail in examining those facts and circumstances and that relationship. That's the first part of my answer. Counsel, I thought that the district court said that as a matter of law, the exculpatory clause could not be enforced. So what's left to be decided here? Why wouldn't it be a final order? Well, it was not a final order, if I may, Your Honor. It was not a final order because it was affirming, excuse me, it was deciding that the release did not bar the claim from moving forward, and therefore the claim moved forward and went to trial. And at trial, as I can point out, there were additional facts that could and should have been considered by the district court had a motion under Rule 52C been made to seek to basically ask the court for the same relief at the end of the case. I realize this is a lot like dancing, I don't know how many angels can dance on the head of a pin, but that, I believe, is the correct answer, and there's a practical reason for that. If I may, at the conclusion of this trial, what the court concluded after a five-day bench trial here in Lincoln, the judge's findings were that the LeMay Aero Club had installed critical safety components that were obtained from a salvage yard, a junkyard, that were not airworthy, that resulted in the failure on the accident flight. The district court concluded that the LeMay Aero Club, and these are its findings of fact, in using the part was playing, quote, Russian roulette, unquote. What page of his order are you on? Your Honor, it's in the conclusion. I can't recall the page number. It's the conclusion of the order. And the precedent facts are all, findings of fact are all there in the order. You know, I just got to ask the, you know, sort of the obvious question. Maybe I'm missing something that you're arguing. That's possible. But when we have this scenario, a bench trial or a jury trial, this is a bench trial, you can still review the non-final order from before denying summary judgment, right? And so I'm trying to figure out what's different from here because I think what they're asking us to do is review, or the government's asking us to do is review the denial of summary judgment. And I can't figure out how they lack jurisdiction to do that now that the case is over. Well, Your Honor, I believe the reason they can't, and I think this is explained in the Ortiz v. Jordan decision and the Dupree v. Younger decision, is that the facts as presented at the time of the summary judgment are superseded by the facts at trial. And the rationale for requiring a motion for judgment as a matter of law after a jury trial or a Rule 52c motion is that based upon the totality of the evidence, all of the facts in the case as they exist at the end of the case, the trial judge is supposed to get, the language is, the first crack at deciding this issue. So at the end of the trial, Judge Girard, had a Rule 52c motion been made, had the government stood up and said, Judge, we know you've denied our summary judgment motion, but we want to make this motion that this case is barred by the covenant not to sue. We know what you ruled before, but we want to make the motion now under Rule 52c. Judge Girard would have had all of the evidence at that point in order to decide that issue. And that's the reason why JMOL motions are made at the close of a jury trial. That's the reason 52c motions are required at the end of a jury, at the end of a bench trial. Well, and that brings us back to the legal factual question that Judge Benton asked earlier. If it's legal, then really the trial doesn't make any difference. If it's factual, then the trial makes a difference. And you would argue, well, you can't review the earlier decision unless the district court has the first crack at it. And in this case, coming back to Judge Benton's initial question about whether this is a purely legal issue or not, it is a question of law, but it is not, as Judge Justice Ginsberg referred to in the Ortiz case, it's not a neat, abstract question of law. It's not, as Judge Justice Barrett mentioned in the Dupree case, it's not a case that can be decided by looking at the law books. The law books may tell us that the standard under Nebraska law, Nebraska public policy, is that one determines, based upon the facts and circumstances, whether the application of a particular covenant would be repugnant to the conscience and therefore in violation of public policy. But in order to determine whether the application of that legal rule, in this case, depends upon what the facts were. What if it's clear, and I'm asking a hypothetical, what if it's absolutely crystal clear that there's no employer-employee relationship here? So that's one of the exceptions. That it is crystal clear that somebody is an independent contractor, it's crystal clear trial, crystal clear summary judgment. Would they then have to file that motion in order for us to have jurisdiction? I hope I don't dodge your question, Your Honor, but if that were the only exception, if that were the only basis for applying public policy under the law in Nebraska and there was no question as to that specific fact, then in that hypothetical situation, conceivably, one might have the answer to a legal question based upon undisputed facts. That's not this case here at all, if I may. This case, the application of Nebraska public policy here, as Judge Girard determined it, had to do with whether Mr. Panting was providing an essential government service. And interestingly, Judge Girard, in his opinion, actually cites the government's reply brief below. And the government doesn't repeat the same language on appeal. It's interesting. If you compare their reply brief below and their briefs on appeal, they leave out this particular sentence. That sentence was, the government does not dispute that Mr. Panting was performing the same tasks as a government inspector would perform in providing a checkride. In other words, the judge was convinced, based on what the government had said, that Mr. Panting was standing in the shoes of a federal inspector. He was performing exactly the same task that a federal inspector would perform in providing. And then Judge Girard went further to explain why that was an essential public service, why based upon the record, based upon the facts, not the law book, but based upon the facts, Judge Girard said in 50 years or 60 years, however many years, that there have been these designated pilot examiners. They have played an important role in making sure that we can certify enough pilots to meet the public need. And that's exactly what Mr. Panting was being asked to do. To help them perform a fundamental public function. And I think where Judge Girard found all this repugnant is that Judge Girard said, okay, the government on one hand is asking him to step into the shoes of performing this essential public service on our behalf, and on the other hand, if we do something negligent, he's barred from any recovery. Let me ask you this. I wanted to get to the second exception next, and I don't think this is a hypothetical. I think if opposing counsel is correct, that it has to be the recipient who's given the public service. And here it is Mr. Panting that was giving the public service. He was not the recipient of the public service. To me, that is a question as a matter of law. If we agree with opposing counsel on that, you cannot win. Because that is just undisputed, that he provided the public service to the recipient who was taking the exam. And, Your Honor, to answer that question, going back to Nebraska law, the government cites the B&O Railroad case. That's not Nebraska law. I think I'm wrong. I think that's an old U.S. Supreme Court case. Judge Girard was looking at Nebraska law, and he was looking at the New Light case and some of the other cases prior to it. And he said the things that you look at to determine public policy are whether an essential government service is being performed and also you look to this question of disparity of bargaining power. I don't disagree with all that. But if it's a matter of law, we read that language. I don't have the language sitting in front of me. Read the language as, in other words, the person taking the exam is the only one that's protected by the public policy, not the person who's giving the exam. If we read it the other way, that seems to me it doesn't matter what Girard, Judge Girard, balanced. As a matter of law, I don't think anyone can dispute that he was the one giving the exam. Your Honor, my argument is that you disagree. But I'm trying to define the case and bring it together a little bit. Well, and that's where, frankly, I think the argument about common carriers performing public services is a straw man. I don't think that what the Nebraska Supreme Court meant by talking about the importance of central public services was just railroads, airlines, and whatever. I can't think of the third category I mentioned. That's not anything found in Nebraska law. That's not what Judge Girard was referring to. So if we just pigeonhole this case and just say, okay, this is somehow a case like a railroad case, and that's the only time the public exception applies, then there is no— It seems that with regard to both the employer-employee exception and the public service exception, we're being asked to extend those exceptions beyond their current terms in order to fit these facts. I think, if I may, Your Honor, the essential— I don't think it's extending the essential public service rule, policy, if you will, beyond its facts. I think Judge Girard was looking at Nebraska law and applying a principle. So I don't think that we're expanding this case beyond that principle, if that's helpful. I thought that the reasoning of the district court was that it applied by analogy rather than by direct application of the heretofore accepted scope of those exceptions. Judge Girard acknowledged that he was deciding an issue that had not been decided by the Nebraska Supreme Court, and his role in this case was to try to decide what the Nebraska Supreme Court would do if it was presented with this case. And I think what Judge Girard did, and what I would consider a very careful, precise, and well-reasoned opinion, is he looked at the policies as they have been articulated by the Nebraska courts, and he applied those accepted principles to the facts of this case. So, Your Honor, I don't—to the extent the question is, are we being asked to decide something that Nebraska— are we going into some new territory that Nebraska has never gone into before? I don't think that's what Judge Girard meant to do. Judge Girard was applying existing principles to the facts of this case, if I may. On the last—sort of the last point that I ask the opposing counsel, I'm curious. Suppose we don't agree with you and say the covenant is, in fact, enforceable. Now we have an interpretive issue sitting in front of us on interpreting the covenant not to sue. Is that something that you think we should decide as a matter of law, or do you think that would have to go back for further development? Your Honor, the last thing I want to do is be back before this court. So the easy answer to say is, no, you—but I'm just being facetious, if I may. It's curious because the government in its brief—and one has to read it very carefully— the government is not only asking this court to overturn what Judge Girard said as relates to public policy, but they are asking this court to basically enforce the covenant not to sue. That's what they're saying in their brief. So the government is asking this court to decide, as I take it, as a matter of law, that the covenant, if applicable—or if it wasn't barred by public policy, would preclude a ruling by this court. And do you agree with that? That's what I'm really interested in. Do you agree and just think it comes out the other way? Sorry for going over time, but— Yes, Your Honor. As long as you want to inquire. Go ahead. And I believe that this court could decide that question as a matter of law. I also—and I'll try to explain why. The covenant not to sue in the Nebraska cases are very specific. They said it should be strictly construed. It should not be clear. It shouldn't be ambiguous. That covenant not to sue, as written, as we've said in our brief, was obviously written by a lawyer, and it says that in order to participate in activities of the Aero Club, or in consideration of my participation in activities of the Aero Club, something to that effect, that Mr. Panting is going to agree to this release. In this case, Your Honor, we contend that Mr. Panting was performing these activities as an independent government inspector. He could have been performing those activities in any airplane, whether it was owned by the Aero Club or not. This was not an Aero Club activity. Therefore, on his face, it does not apply. Secondly, if we say, for some reason, this is an Aero Club activity, then we look at the way that that document is interpreted. The document basically says, you're agreeing to do this in consideration of performing various activities. What are various activities? I don't know what various is. It's implied flying activities, though, counsel. If I may, Your Honor. It says, including flying activities. Maybe there's something more. I don't know. Including flying activities. Then there's another comma. Then it says, as. It doesn't say, as a pilot. It says, as pilot. The record, if we look specifically at the transcript where the government's own expert, who was a DPE, was asked, what's the role of the applicant? He said, the applicant's the pilot in command. He said, where do the people, and I'm paraphrasing. He said, well, where do the people sit? Well, he says, the applicant sits in the left seat. You know, the pilot seat. The pilot seat. And then, where does the examiner sit? In the right seat. In the right seat. And that's where the examiner sits. Counsel, I think that concludes your answer to Judge Strauss. Thank you for the argument. Thank you very much. Mr. Shaw. Thank you. Thank you, Your Honors. I just have a few points in rebuttal. Returning to the issue of whether this is a purely legal issue, I think Mr. Anderson said that the district court judge found that he had to look at facts. And, of course, every legal issue also involves facts. The question is, are there disputed facts? And during his time at the podium, I didn't hear Mr. Anderson identify any facts that are actually in dispute between the parties. And not only disputed, but material. They have to be material facts as well. Yeah, exactly. Yeah, that's right. In terms of he referred to the fact that we didn't say in our brief that DPEs perform the same role as an FAA inspector. I mean, we can assume that to be true. I don't think it changes any of the legal analysis. It doesn't change the fact that what the Aero Club was doing was not providing a public or essential service. Mr. Anderson referred to the idea that, to this sort of language, and I think it was in the Dupree opinion about the answer being found in law books. I don't think that's an actual test for what's a purely legal issue. But even if it was, the question here is something that can be found in law books. The question here is, if we assume that Nebraska law applies, would the Nebraska Supreme Court, based on its decisions that we've seen, conclude that the public or essential services exception applies where it is the plaintiff that is providing the service and not the defendant? And I think that is obviously a purely legal question. Mr. Anderson said that the DPE sits in the right seat. Well, the right seat is the seat for the copilot. And we've identified portions of the DPE manual. We've cited to the Fifth Circuit's decision in Hayes and many other sources of law that would suggest that what DPEs do at least can be considered to be serving as a copilot or a safety pilot or even as a pilot on the plane. And even if they are none of those categories, they are at least a passenger. If the Court has no further questions. Seeing none, thank you for your argument. Thank you. Case number 24-3426 is submitted for decision by the Court. Ms. McKee.